

ORDERED in the Southern District of Florida on November 01, 2007.

Laurel M. Isicoff, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

In re:                                                    Case No. 07-11868-BKC-LMI

JOHN'S BEAN FARM OF
HOMESTEAD, INC.,
                                                          Chapter 7
        Debtor.

_____/

**ORDER GRANTING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING IN PART AND DENYING IN PART WILLIAM KLEIN'S
<u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

**<u>INTRODUCTION</u>**

This matter came before the Court on the Trustee's Motion for Partial Summary Judgment on Trustee's Objection to Claim No. 1 Filed by Bill Klein (CP #36), and William Klein's Response and Cross-Motion for Summary Judgment (CP #55). The matter under consideration is one of first impression in this district and concerns the degree of error necessary to render a financing statement "seriously misleading" under revised Uniform Commercial Code section 9-506, as adopted in Florida. For the reasons set forth below, the Court finds that William Klein's financing statement is seriously misleading and, therefore, ineffective to perfect Klein's asserted security interest. Summary judgment is accordingly granted in favor of the Trustee on his motion for summary

judgment.  Summary judgment is granted to Klein on his cross-motion with respect to his holding an allowed unsecured claim; the balance of the cross-motion is denied.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334(b).  This is a core proceeding within the meaning of 28 U.S.C. §157(b)(1).

## BACKGROUND

On March 20, 2007, John's Bean Farm of Homestead, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  William Klein (the "Creditor" or "Klein") filed a proof of claim on April 6, 2007, asserting a total claim in the amount of $152,000, claiming $120,000 was secured and $32,000 was an unsecured priority claim (Tr. Mot. Summ. J. Ex. B).  On May 9, 2007, Barry E. Mukamal, in his capacity as Chapter 7 Trustee (the "Trustee"), filed an objection to the proof of claim and moved for summary judgment in his favor.  Klein filed a cross-motion for summary judgment.  From the affidavits, exhibits, and pleadings filed in connection with the motion and cross-motion, the material undisputed facts are as follows:

The Debtor, a Florida corporation, owned and operated a commercial bean farm in Homestead, Florida. (Tr.'s Mot. Summ. J. ¶ 3.)  On or about October 2005, Klein made a loan to the Debtor in the amount of $197,255.33, which the Debtor used to purchase a John Deere Spray Machine Model No. 4720 (the "Equipment").  (Tr.'s Mot. Summ. J. ¶ 4; Klein Resp. ¶¶ 1-3.)  The loan was never memorialized in writing.  (Tr.'s Mot. Summ. J. ¶ 4.)  When the Debtor defaulted and was unable to make full payment by the repayment date, Klein purported to take a security interest in the Equipment, evidenced by a Security Agreement and Secured Promissory Note dated July 28, 2006.  (Tr.'s Mot. Summ. J. ¶ 4; Klein Resp. ¶¶ 4-8.)  In an attempt to perfect his security interest,

Klein filed a UCC-1 Financing Statement with the Florida Secured Transaction Registry[1] on August 9, 2006, which identified the Debtor as "John Bean Farms, Inc." instead of the Debtor's actual name of incorporation, "John's Bean Farm of Homestead, Inc." (Tr.'s Mot. Summ. J. Ex. A; Klein Resp. ¶ 10.)  In fact, all of the documents evidencing the transaction used the name "John Bean Farms, Inc." Subsequently, the Debtor filed a Chapter 7 petition and, shortly thereafter, Klein filed his proof of claim. (Tr.'s Mot. Summ. J. Ex. B; Klein Resp. ¶¶ 13, 15.)

The Trustee filed an objection to the claim (CP #24) contending that Klein's financing statement, which misidentified the Debtor, fails to comply with the general rule governing the sufficiency of debtor names on financing statements[2] and the concomitant safe harbor provision[3] for minor errors, and that therefore Klein's claim, if any, is unsecured. The Trustee also objected to the Klein's priority claim of $32,000.  Finally, the Trustee objected to the entire claim subject to Klein providing sufficient proof that the loan was actually funded.  Trustee seeks summary judgment on the first two grounds of his objection – that is, that Klein's claim, if any, is neither secured nor entitled to priority status.

Klein filed a response to Trustee's motion arguing that while his financing statement failed to comply with the requirements for filing under the Debtor's actual name, the filing was, in fact, not seriously misleading and therefore, the financing statement was adequate to perfect his security interest in the Equipment.[4]  Klein seeks, in his cross-motion for summary judgment, a determination that he did, in fact, fund the loan to the Debtor.

It is undisputed that the Debtor's correct name was not provided on the financing statement filed. (Klein Resp. ¶ 10.)  Thus, the primary issue this Court must determine is whether the

---

[1] On October 1, 2001, Florida privatized its UCC filing office and designated the Florida Secured Transaction Registry as the office in which to file a financing statement to perfect a security interest. Fla. Stat. §679.5011.
[2] Fla. Stat. §679.5031
[3] Fla. Stat. §679.5061
[4] Klein conceded in his response that he is not entitled to a priority claim and therefore that issue is resolved in the Trustee's favor.  (Klein Resp. n. 2).

financing statement filed by Klein conforms with Florida's safe harbor provision or is seriously misleading. If the former, then Klein's lien is perfected;[5] if the latter, then Klein's lien is unperfected. A second issue is whether Klein's lien if perfected can be avoided, and the third, whether Klein has a claim at all.

## **STANDARD OF REVIEW**

Summary judgment is governed by Fed. R. Civ. P. 56, made applicable to bankruptcy cases pursuant to Fed. R. Bankr. P. 7056. Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, taken together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In determining whether a genuine issue of material fact remains for trial, the court must construe the facts and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Cuesta v. Sch. Bd. of Miami-Dade County, Fla.*, 285 F.3d 962, 966 (11th Cir. 2002); *Loren v. Sasser*, 309 F.3d 1296, 1301-1302 (11th Cir. 2002); *In re Pony Exp. Delivery Serv., Inc.*, 440 F.3d 1296, 1300 (11th Cir. 2006). However, the mere existence of a "scintilla of evidence" in support of the nonmovant's position will be insufficient to forestall summary judgment; "there must be enough of a showing that the jury could reasonably find for that party." *Loren v. Sasser*, 309 F.3d at 1302 (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment relief under Bankruptcy Rule 7056 applies in contested matters. Fed. R. Bankr. P. 9014.

---

[5] This assumes the loan was funded since a creditor can only perfect a lien when the security interest attaches, and a security interest cannot attach until the loan is funded. Fla. Stat. §679.2031(2)(a)**.**

## **PERFECTION OF SECURITY INTERESTS IN FLORIDA**

With certain exceptions not applicable here, perfection of a security interest in Florida occurs only when a financing statement is filed in the appropriate place. Fla. Stat. §679.5011. All financing statements must be filed with Florida's official filing office, the Florida Secured Transaction Registry (the "Registry"). *See* Fla. Stat. §679.5011(1)(b). The financing statement must provide three pieces of information to be considered sufficient for perfection: (1) the name of the debtor, (2) the name of the secured party, and (3) the collateral covered. Fla. Stat. §679.5021(1). Financing statements are indexed by debtor name; the debtor's name is the essential element to locating the financing statement. Fla. Stat. §679.5031 cmt. 2 ("The requirement that a financing statement provide the debtor's name is particularly important.  Financing statements are indexed under the name of the debtor and those who wish to find financing statements search for them under the debtor's name.").  The Registry offers an online database that searchers can use to explore financing statements by the debtor name.  A search under a debtor's name displays an alphabetical name list with twenty (20) entries and the exact or nearest match at the top of the Search Results screen. The commands "Previous" and "Next" appear on the results screen and direct a searcher to utilize the buttons to view "additional search results."

Section 679.5031 of the Florida Statutes sets forth the specific rules on how to sufficiently provide a debtor's name.  For a debtor corporation this requirement is satisfied "only if the financing statement provides the name of the debtor indicated on the public record of the debtor's jurisdiction of organization which shows the debtor to have been organized." Fla. Stat. §679.5031(1)(a).

Although the Florida statute requires that the debtor's name be precise, Florida law contains a safe harbor provision:

> A financing statement substantially complying with the requirements [of Section 679.5031] is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading.

Fla. Stat. §679.5061(1) (the "Safe Harbor provision"). An error is minor, and the financing statement effective to perfect a creditor's security interest, "[i]f a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose" the creditor's financing statement. Fla. Stat. §679.5061(2). Conversely, an erroneous debtor name makes a financing statement "seriously misleading" and precludes perfection if a search under the debtor's correct name would not disclose the financing statement.[6]

### "Perfect" Financing Statements before Article 9 was Revised

Under the prior statute, former Fla. Stat. §679.402,[7] a financing statement, in order to be effective, was sufficient if it included "the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor, and contains a statement indicating the types, or describing the items, of collateral. …" Fla. Stat. §679.402(1) (repealed). The "seriously misleading" standard applied in determining if a mistake in the name of a debtor made a financing statement unenforceable but the statute provided no formal definition of what constituted seriously misleading.[8] So long as a financing statement substantially conformed to the requirements of the statute, minor errors were not presumed to be seriously misleading.[9]

---

[6] In fact, even if a financing statement using the debtor's incorrect name, is "disclosed by (i) using a search logic other than that of the filing office to search the official records, or (ii) using the filing office's standard search logic to search a data base other than that of the filing office," the financial statement would nonetheless be seriously misleading, and therefore, ineffective.  U.C.C. Code §9-506 cmt. 2 (2002).

[7] (repealed Jan. 1, 2002), a codification of former U.C.C. §402.

[8] Fla. Stat. §679.402(7) (repealed).

[9] "(6) A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership, or corporate name of the debtor, whether or not it adds other trade names or names of partners. …
(7) A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."  Fla. Stat. §679.402(6)-(7)(repealed).

6

Absent a statutory definition, Florida courts, as well as many other courts around the country, implemented the 'reasonably diligent searcher' standard, a standard that required the reviewing court to determine, on a case-by-case basis, whether a hypothetical reasonable searcher would have been able to discover the non-conforming financing statement despite the error in a debtor's name. This "allowed judges to second-guess what searchers should or should not have been able to discover had they tried hard enough." Margit Livingston, "A *rose by any other name would smell as sweet*" *(or would it?); Filing and searching in Article 9's Public Records*, 2007 B.Y.U.L. Rev. 111, 124 (2007). This standard created extensive litigation and fragmented or contradictory decisions. *See, e.g., Brushwood v. Citizens Bank of Perry (In re Glasco, Inc.)*, 642 F.2d 793 (5th Cir. 1981) (holding that a financing statement that listed the debtor by the trade name in which it did business rather than its corporate name was not seriously misleading.).

### Perfect Financing Statements Under Revised Article 9

A primary purpose of revised section 9-506 of the UCC, adopted in Florida as Fla. Stat. §679.5061,[10] was to replace the former reasonableness standard with a clearer standard based on the computerized search logic of the filing office. This represents a significant shift from the prior law. Enacted to clarify the sufficiency of debtors' names in financing statements, the revision was "designed to discourage the fanatical and impossibly refined reading of statutory requirements in which courts occasionally have indulged themselves." Fla. Stat. §679.5061 cmt. 2. *See In re Kinderknecht*, 308 B.R. 71, 75 (B.A.P. 10th Cir. 2004) ("The intent to clarify when a debtor's name is sufficient shows a desire to foreclose fact-intensive tests, such as those that existed under former Article 9 of the UCC.")

---

[10] Article 9 of the Uniform Commercial Code (the "UCC") was substantially revised in the 1990's. The changes to Article 9 took years to develop, but within two years after the Uniform Rule was adopted by the National Conference of Commissioners on Uniform State Laws in 1998, virtually all states adopted these changes, albeit with some modifications, as states are wont to do when adopting a uniform rule.

7

Courts in other states that have adopted revised Article 9 have recognized and emphasized the purpose and importance of this change in the search standard. The Supreme Court of Kansas analyzed its own state's adoption of revised UCC sections 9-503 and 9-506 (which adoption is virtually identical to the Florida language) and noted the importance of the accuracy of the name and the reasons behind the shift in focus of the revised Article 9:

> [T]he express provisions of the revised amendments read *in para materia*, and the Official UCC Comments are all in accord that the primary purpose of the revision of the name requirement is to lessen the amount of fact-intensive, case-by-case determinations that plagued earlier versions of the UCC, and to simplify the filing system as a whole. The object of the revisions was to shift the responsibility to the filer by requiring the not too heavy burden of using the legal name of the debtor, thereby relieving the searcher from conducting numerous searches using every conceivable name variation of the debtor.

*Pankratz Implement Co. v. Citizens Nat'l Bank*, 281 Kan. 209, 227, 130 P.3d 57, 68 (Kan. 2006). *Accord In re F.V. Steel and Wire Co.*, 310 B.R. 390, 393-94 (Bankr. E.D. Wis. 2004) ("A rule that would burden a searcher with guessing at misspellings and various configurations of a legal name would not provide creditors with the certainty that is essential in commercial transactions.")

Under revised Article 9 what debtor misnomer is "seriously misleading" is statutorily defined as that which would not be discovered using the state's standard search logic. Thus, under the Safe Harbor provision, the discoverability of a financing statement expressly delimits permissible error. A financing statement is effective if a computer search run under the debtor's correct name produces the financing statement with the incorrect name. If it does not, then the financing statement is ineffective as a matter of law. This new standard is intended to

> reflect[ ] a balance between the need for some flexibility to allow for human error on the part of filers…and the avoidance of a rule that would cast an altogether inappropriate burden on searchers to have to try to divine potential errors and make searches under not only the correct name but also "foreseeable" or "likely" errors that a filer might have made[.]

Harry C. Sigman,[11] *Twenty Questions About Filing Under Revised Article 9: The Rules of the Game Under New Part 5*, 74 CHI.KENT L. REV. 861, 862-63 (1999). *See also* Steven O. Weise,[12] *An Overview of Revised Article 9, in the New Article 9 Uniform Commercial Code* 7 (Corinne Cooper, ed., 2d. ed. 2000).

> Revised Article 9 contains a statutory rule to determine when a mistake [sic] the debtor's name is so incorrect as to make the financing statement ineffective. The financing statement is effective if a computer search run under the debtor's correct name turns up the financing statement with the incorrect name. If it does not, then the financing statement is ineffective as a matter of law. The court has no discretion to determine that the incorrect name is 'close enough'.

*Id.* (as quoted in *In re F.V. Steel and Wire Co.*, 310 B.R. at 393-94).

Post-revision case law is fairly well settled that the burden is squarely on the creditor to correctly identify the name of the debtor.[13]

> Revised Article 9 requires more accuracy in filings, and places less burden on the searcher to seek out erroneous filings. The revisions to Article 9 remove some of the burden placed on searchers under the former law, and do not require multiple searches using variations on the debtor's name. Revised Article 9 rejects the duty of a searcher to search using any names other than the name of the debtor indicated on the public record of the debtor's jurisdiction of organization.

*In re Summit Staffing Polk County, Inc.*, 305 B.R. 347, 354-55 (Bankr. M.D. Fla. 2003). *See Receivables Purchasing Co. v. R&R Directional Drilling, LLC*, 263 Ga. App. 649, 652, 588 S.E. 2d 831, 833 (Ga. 2003) ("[A] party filing a financing statement now acts at his peril if he files the statement under an incorrect name.")

---

[11] Mr. Sigman was a member of the Revised Article 9 Drafting Committee.

[12] Mr. Weise was the ABA advisor to the Article 9 Drafting Committee.

[13] The change in law has also altered the burdens in litigation. Under the former statute, a financing statement that contained errors of any kind, but was otherwise substantially compliant, was presumed enforceable unless those errors were found to be seriously misleading. The revised statute provides a financing statement that contains errors in the debtor's name is presumed unenforceable unless those errors are found not to be seriously misleading. The reversal of the presumption also switches the burden of persuasion. The former statute required the party contesting the enforceability of the financing statement to prove that the errors were seriously misleading. However, under the revised statute, once the contesting party meets his or her burden of production by showing the financing statement does not conform to the statute, the party advocating the efficacy of the financing statement must prove that those errors do not make the statement seriously misleading.

The majority of cases decided under revised Article 9 are unforgiving of even minimal errors.[14] In *In re Tyringham Holdings, Inc.*, 354 B.R. 363 (Bankr. E.D. Va. 2006), the creditor filed a financing statement covering 65 pieces of jewelry totaling $310,925 worth of consigned inventory. However, the creditor listed the name of the debtor as "Tyringham Holdings" rather than the debtor's legal corporate name, "Tyringham Holdings, Inc." Although the name error merely omitted the corporate suffix "Inc.", an official search under the debtor's actual name did not reveal the creditor's financing statement and the court held that, therefore, the financing statement was ineffective to perfect the security interest. The *Tyringham* court reasoned:

> [w]hile application of the filing office's standard search logic may lead to situations where it appears a relatively minor error in a financing statement leads to a security interest becoming unperfected, it is not that difficult to ensure that a financing statement is filed with the correct name of the debtor. Little more is asked of a creditor than to accurately record the debtor's name, and according to the statute, failure to perform this action clearly dooms the perfected status of a security interest.

354 B.R. at 368. Similarly, in *Pankratz Implement Co. v. Citizens Nat'l Bank*, 281 Kan. 209, the debtor purchased a tractor from the creditor, signed a security agreement, and the creditor misspelled the debtor's name on the financing statement by omitting a "d"—listing the debtor as "Roger House" instead of his legal name "Rodger House." The Supreme Court of Kansas upheld summary judgment invalidating the prior interest represented by the faulty financing statement. In *Host America Corp. v. Coastline Financial, Inc.*, 2006 WL 159614 (D. Utah 2006) the court held that a financing statement was seriously misleading where the debtor, whose name was "K.W.M. Electronics Corporation" was identified in the financing statement as "K W M Electronics Corporation."[15]

---

[14] The "single search" standard has been criticized as being hypertechnical and too unforgiving of minor errors. *See, generally*, 2007 B.Y.U.L. Rev. 111;  Meghan M. Sercombe, Note, *Good Technology and Bad Law: How Computerization Threatens Notice Filing Under Revised Article 9*, 84 TEX. L. REV. 1065 (2006).

[15] Klein argues that cases from other states are inapposite because the search logic of those states is different than the Florida search logic. While the manner in which the searches are conducted may be different, the underlying purpose of the statutory change in each state, and the recognition that the bright line test may result in excluding what might have

10

This canvas of history, commentary and application sets the background against which the adequacy of Klein's financing statement must be judged.

## THE KLEIN FINANCING STATEMENT IS SERIOUSLY MISLEADING

Both the Trustee and Klein rely on *In re Summit Staffing Polk County, Inc.*, 305 B.R. 347. In that case Chief Judge Glenn determined that a financing statement that identified the debtor as "Summit Staffing, Inc." rather than by the debtor's correct name of "Summit Staffing of Polk County, Inc." was not seriously misleading because, although using the standard search logic for Florida did not produce a page on which the financing statement appeared, the searcher only had to push the "previous" button one time and the financing statement was listed. Chief Judge Glenn held that the 'reasonably diligent searcher' standard survives in some part. "Although Revised Article 9 does not require that a searcher exercise reasonable diligence in the selection of the names to be searched or the number of searches to conduct, the revisions to Article 9 do not entirely remove the duty imposed on a searcher to be reasonably diligent." *Id.* at 355. In Chief Judge Glenn's view, some burden is placed on the searcher to employ "reasonable diligence in examining the results of the search." *Id.*

In the *Summit Staffing* case, a creditor, Associated Receivables, filed a financing statement listing the debtor as Randy A. Vincent and "Summit Staffing," a sole proprietorship, as an additional debtor. Summit Staffing was subsequently incorporated as "Summit Staffing of Polk County, Inc." The corporation later filed for relief under Chapter 7 of the Bankruptcy Code. The Chapter 7 Trustee conducted a UCC search through the Florida Secured Transaction Registry website using the actual corporate name of the debtor, Summit Staffing of Polk County, Inc., and found no financing statement relating to the debtor's assets. The name "Summit Staffing" appeared at the top of the page displayed when a search under the debtor's correct name was made. By

---

previously been considered "minor" errors, are both illustrative of, and authoritative on, the issues presented in this case.

11

selecting the "previous" command to display the results page with alphabetical listings immediately prior to the page displayed, the Associated Receivables financing statement appeared. In determining the financing statement was not seriously misleading, and that Florida's standard search logic revealed the faulty financing statement, Chief Judge Glenn wrote:

> When a search is conducted in the Florida Secured Transaction Registry, a listing of debtors' names is produced. The listing is an alphabetical listing, and 20 names are displayed. If the debtor's actual name is produced, it is at the top of the list. If the debtor's name is not found, the next succeeding name on the alphabetical list is at the top of the list. To see the next preceding name on the alphabetical list, the searcher must use the "Previous" command on the screen. In fact, at the top of the list is the statement: "Use the Previous and Next buttons *to display additional search results*." (Emphasis supplied.) This statement directs the searcher to use the "Previous" command to see the immediately preceding names on the alphabetical list.
>
> Certainly the searcher should do this. Since the name immediately following Summit Staffing of Polk County, Inc. is produced at the top of the alphabetical list, and since the filing office's directions state that the searcher should use the "Previous" command to display additional search results, clearly a searcher should check the preceding names on the alphabetical list.

305 B.R. at 353-354. However, Chief Judge Glenn noted that the obligation to push the "previous" button is not limitless.

> Although it is clear that a searcher should check the immediately preceding names as well as the immediately succeeding names on an alphabetical list if there is not an exact match of the debtor's correct name, the issue of "reasonableness" develops at some point because the listing is an alphabetical listing. Although only three names begin with "Summit Staffing," there are several screens of debtors' names, with 20 names per screen, that begin with "Summit." Moreover, since the listing is an alphabetical listing, it is conceivable that one could use the "Previous" command to go to back to the beginning of the alphabetical list.

*Id.* at 354.

Here, the Trustee conducted a search of the Registry's online database.[16] Using the Debtor's correct name, the Trustee's search yielded no matches. (Tr.'s Mot. Summ. J. Ex. C ¶ 3.) It is undisputed that when the Debtor's correct name was inputted as the search term, the listing of 20 names on the initial search result screen did not disclose the Klein financing statement. (Tr.'s Mot. Summ. J. ¶ 21; Klein Resp. n. 25.) Klein's financing statement was only found by striking the "previous" command 60 times. (Tr. Mot. Summ. J. ¶ 22; Dubon Aff. ¶¶ 4-5; Klein Resp. n. 25.)

The Trustee relies on *Summit Staffing* arguing the case demonstrates that only the initial search result screen generated when the Debtor's correct name is input counts as the search result and, since Klein's financing statement did not appear on the initial page displayed, the financing statement is seriously misleading. Moreover, the Trustee argues, even if the search result goes beyond the initial result screen, then, as Chief Judge Glenn stated in *Summit Staffing*, the obligation to expand the search beyond the initial page displayed must be reasonable.

Klein also relies on *Summit Staffing*. Klein correctly points out that in *Summit Staffing*, the disputed financing statement did not appear on the initial page displayed, but rather the page displayed when the searcher pushed the "previous" command once. Thus, Klein argues, the results of "standard search logic" in Florida means something other than the initial result screen. However, Klein goes on to argue that Chief Judge Glenn improperly imposed a "reasonableness" requirement on the searcher's duty, that the statute is unambiguous, and has no "reasonableness" limitation. Since, by pushing the "previous" command (60 times) the Klein financing statement did eventually appear, Klein argues the financing statement is not seriously misleading.

---

[16] The online database is not the official "records of the filing office." http://www.floridaucc.com/search_disclaimer, however, a search of the database certainly is a search of the Registry's records. Both the Trustee and Klein have relied on the online database search as the basis and support for the relief they seek, and accordingly, for the purposes of this case, are deemed to have stipulated that the search of the online database is the "search of the records of the filing office."

13

The Trustee argues "[t]o require a secured creditor to search through numerous pages of names would defeat the salutary purpose of revised Article 9 and set dangerous precedent."  (Tr. Mot. Summ. J. ¶ 23.)  Klein counters that since the plain language of the statute has no reasonableness requirement the court cannot impose a requirement that the statute doesn't provide.  "Adding a reasonableness requirement would inevitably result in a situation where courts would have to delve into a host of case by case factual issues that were never contemplated by the legislative, and indeed, would require the courts to effectively rewrite the Safe Harbor Provision [Fla. Stat. §679.5061] in a manner that conflicts with the plain language."  (Klein Resp. 11.)  Thus, according to Klein's interpretation of the statute, <u>any</u> financing statement filed, no matter how far it may appear from the proper listing, would be sufficient so long as the statement could be found at some point in the pages preceding or following the initial displayed page.  Under this interpretation, absent any reasonableness as to the distance between a proper and improper listing, a searcher would have to look through every page of the online database to determine whether or not a financing statement exists.

The crux of the dispute between the Trustee and Klein is what constitutes the search result using Florida's standard search logic. If my answer to this question is something other than the initial displayed page, then I must determine whether there is a limit on how much a searcher must search past the original display page.  The debate between the Trustee and Klein centers on the meaning of "a search of the records of the filing office under the Debtor's correct name, using the filing office's standard search logic …."  As noted, the Trustee argues this refers to the initial page result; Klein argues there is a difference between a "search result" and a "display".

The only "search logic" in Florida is statutorily defined as a search by the debtor's name or document number.[17] In order to determine what is the result of inputting that search logic, it is necessary and appropriate to understand what the Registry explains is a "result". The Registry, at its website, www.floridaucc.com, has a list of frequently asked questions.[18] One of the questions listed is "How do I do my own search on the Internet". The answer to that question is:

> You can access the UCC filed records for the Florida Secured Transaction Registry on the Internet at: www.floridaucc.com. Click on the "Search" option. Choose one item in the "Select Search Type" box, then enter the appropriate data in the "Name/Document Number" box, and click on "search". *The exact name or number or the nearest alphabetical or numeric entry will be displayed.* Click on the number of the entry(ies) you are interested in

Florida Secured Transaction Registry, UCC Frequently Asked Questions, http://www.floridaucc.com/faq.html (emphasis added). The same website has a Help menu that explains "UCC Filing Inquiry by Debtor Name". That section states in pertinent part:

> These transactions provide a list of UCC filings on the Florida Secured Transaction Registry beginning with the name that is closest to the key entered. This list also includes the document number and the type of each record. There are several inquiry functions available using the Debtor's Name, all of these inquiry functions will provide the user with an alphabetic listing beginning with the name closest to the key entered.

*Id.* at http://www.floridaucc.com/help.html#name.

I agree with Klein that the statute is unambiguous. Moreover, I agree with Klein that the statute does not include a reasonableness requirement. Indeed, as explained in great detail above, the very purpose of this statute was to eliminate the need for, indeed, the ability of, a judge to inject himself or herself in the determination of what is seriously misleading. However, I disagree with

---

[17] Although proposed Model Administrative Rules for secured transactions have been promulgated by the International Association of Commercial Administrators, Florida has not adopted any type of rule or Administrative Code section to expand the statutory search logic.

[18] The Court may take judicial notice of the Registry website, Fed. R. Evid. 201. A court ruling on summary judgment may rely on judicially noticed facts. *See Fed. Election Comm'n. v. Hall-Tyner Election Campaign Comm.*, 524 F. Supp. 955 (S.D.N.Y. 1981). *Accord Brown v. Brock*, 169 Fed. App'x. 579 (11th Cir. 2006); *Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293 (11th Cir. 1998).

Klein's assertion that the initial page displayed is <u>not</u> the result of applying Florida's standard search logic. Florida's standard search logic is set by statute. The search logic clearly leads to one result – a single page on which names appear. For those, including Klein, that argue the search result is something more, the Registry website makes clear they are wrong. The Registry's own website unambiguously describes the page displayed when the search data is input as the result of the search. Nothing in the Registry's information page mentions the use of the "previous" or "next" page key in connection with conducting a search using the search criteria. Since it is undisputed that Klein's financing statement did not appear in the search result when the Debtor's correct name was input, the financing statement is seriously misleading and summary judgment in the Trustee's favor is appropriate.

Although I have found that Fla. Stat. §679.5061 is unambiguous, and that there is no implicit or explicit obligation of a searcher to go beyond the search result, I feel compelled to address what I view as Klein's incredible argument that the Florida statute unambiguously requires a searcher to scroll through the pages of the UCC search until the nonconforming financing statement is located. If Klein is correct, that the "search result" means something other than the page displayed when the required data is input, it does not follow that the statute requires a limitless search through the UCC database.

Klein argues that the case law is clear – when a statute is unambiguous on its face, it must be applied as written. However, Klein cavalierly casts aside as inapplicable the equally long and well established case law on statutory construction that reminds us -

> When applying the plain and ordinary meaning of statutory language "produces a result that is not just unwise but is clearly absurd, another principle comes into the picture. That principle is the venerable one that statutory language should not be applied literally if doing so would produce an absurd result."

*Miedema v. Maytag Corp.*, 450 F.3d 1322, 1326 (11th Cir. 2006) (quoting *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1188 (11th Cir. 1997)).

Klein's argument that Florida's Safe Harbor provision clearly recognizes his financing statement was not seriously misleading, notwithstanding that it was listed 60 pages prior to the displayed search result (that is 1,200 entries), asks this Court to apply a meaning to the Safe Harbor provision that is "clearly absurd". Such an interpretation would eviscerate the purpose of the statute – that is, to create a framework for the perfection of security interests that is less arbitrary, that includes statutory guidance for simplifying the search, while allowing for "minor" errors.

Accordingly, if I am incorrect, and in fact, the Florida search result includes more than the initial page displayed, then, in order to interpret section 679.5061 so as to avoid an absurd result, I would be compelled alternatively to hold, as did Chief Judge Glenn, that there is a reasonable limit to the search, which I find is no more than one page "previous" or "next" from the initial result screen. Since Klein's financing statement appears 60 pages from the initial display, not one page, it is seriously misleading.

## KLEIN'S CROSS MOTION FOR SUMMARY JUDGMENT

Klein seeks a determination that he is entitled to a claim in the amount of $152,000. In support of his cross-motion, Klein submitted the affidavits of John Sizemore, the manager of the Debtor, and his own affidavit. Both affidavits attest that Klein lent the Debtor $197,255.33, by endorsing and transferring to Debtor three checks made payable to William Klein by DiMare Homestead, Inc. (Klein Aff. ¶¶ 2, 4-5; Sizemore Aff. ¶ 3.)[19] The affidavits further state that, in July 2006, the Debtor executed a promissory note in the amount of $152,000 representing the unpaid balance of the loan. (Klein Aff. ¶ 11; Sizemore Aff. ¶ 8.) Both affidavits state that the Debtor never made any payments on the Note. (Klein Aff. ¶ 15; Sizemore Aff. ¶ 11.)

---

[19] The Klein affidavit states one check was lost and replaced. (Klein Aff. at ¶ 4.)

In response, the Trustee argues that because the checks (copies of which were attached to the Klein Affidavit) appear to have been deposited by Klein, rather than endorsed to Debtor, that "Klein has not made a sufficient showing … that he actually provided any funds to the Debtor and a genuine issue of material fact exists with respect to whether the DiMare checks were actually transferred by Klein to the Debtor." (Tr.'s Reply and Resp. 8.) The Trustee does not provide any other information or affidavits regarding this issue.

Fed. R. Civ. P. 56(e), made applicable to this contested matter by virtue of Fed. R. Bankr. P. 7056, requires that when a party seeking summary judgment has provided affidavits in support of such relief as required by Rule 56 "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Klein has demonstrated that summary judgment in his favor is appropriate.  The Trustee has failed to meet his burden under Rule 56(e).  Accordingly, Klein is entitled to summary judgment on the issue of his entitlement to an unsecured claim in the amount of $152,000.

## **CONCLUSION**

Based on the foregoing, it is ORDERED and ADJUDGED as follows:

a. The Trustee's motion for summary judgment is granted.  Klein does not hold a secured or priority claim.  Because I have found that, as a matter of law, Klein does not hold a secured claim, I do not need to reach the third issue on the Trustee's motion for summary judgment regarding the avoidability of Klein's asserted lien on the Equipment.

      b.      Klein's cross motion for summary judgment is denied in part and granted in part. Although Klein does not hold a secured claim, he is entitled to summary judgment that he holds an unsecured claim in the amount of $152,000.00.

# # #

Copies furnished to:
Nathan Mancuso, Esq.
Michael Budwick, Esq.

*Attorney Mancuso shall serve a conformed copy of this order upon all parties in interest and shall file a Certificate of Service of same with the Clerk of the Court.*